NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM MICHAEL FREDERICK TAYLOR,**
*Plaintiff-Appellant*

**v.**

**ANDREI IANCU, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellee*

---

2018-1047

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:15-cv-01607-LMB-JFA, United States District Judge Leonie M. Brinkema.

---

Decided: April 3, 2020

---

WILLIAM MICHAEL FREDERICK TAYLOR, Chiddingfold, Surrey, United Kingdom, pro se.

THOMAS W. KRAUSE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for defendant-appellee. Also represented by JOSEPH MATAL, MEREDITH HOPE SCHOENFELD, MAI-TRANG DUC DANG.

---

Before DYK, CHEN, and STOLL, *Circuit Judges.*

PER CURIAM.

William Michael Frederick Taylor ("Mr. Taylor") sued the Director of the U.S. Patent and Trademark Office ("Patent Office") under 35 U.S.C. § 145, challenging the Patent Office's rejection of U.S. Application Serial No. 11/807,860 ("the '860 application"), of which Mr. Taylor is the inventor.[1]  The district court granted summary judgment to the Patent Office, concluding that all of the '860 application's claims are not enabled and are indefinite.  We *affirm* on the ground that the '860 application's claims lack enablement.

## BACKGROUND

The '860 application claims priority to United Kingdom Patent Application No. GB9310175.6, filed on May 18, 1993.  The specification describes a system called "GPS Explorer." J.A. 277.  GPS Explorer, the specification explains, "is designed to provide information [to a user] on the move," such as "while driving, flying, sailing, riding or walking." J.A. 277, 278.  GPS Explorer allows a user to "select one or more of [GPS Explorer's] many modes of operation." J.A. 280.  In "Simulation Mode," "the user may access [a]

---

[1]    Mr. Taylor also challenged, in separate cases, the Patent Office's rejection of two of his related applications: U.S. Application Serial Nos. 10/425,553 ("the '553 application") and 11/391,501 ("the '501 application").  The district court consolidated the three cases, and concluded that each of the applications was unpatentable.  Mr. Taylor separately appeals the district court's decision as to the '553 application (Case No. 18-1048) and as to the '501 application (Case No. 18-1070).  Our decisions on those appeals are being issued concurrently with this decision.

database to obtain a computer[-]based simulation of some aspect of [a] location." J.A. 286. The specification explains that simulation mode can be used:

> to see the route of a proposed new road or the simulated facade of a proposed new building. By walking around the physical site, as the GPS data changes so will the simulation to illustrate the simulated views from the new physical position taking into consideration the user[']s orientation, height, direction of view, view angle of azimuth and time of day. The simulation may be presented on a display screen or any form of image projection system such as a virtual reality helmet or other device. If used in conjunction with a head up display the user will have both the present image and simulated future in view simultaneously enabling comparison.

*Id.*

Each of the '860 application's independent claims—claims 1 and 19—presents data to a user as a "computer-based simulation" and based on a user-specified "mode of operation." Claim 1 recites:

1. A system for mobile searching of information, comprising:

> a portable device that accesses a database, wherein the portable device further comprises;

> an input component which allows a user to select type of data of interest to the user;

> a position determining component sensing a position of the portable device, and providing the sensed position to a computing component of the portable device;

> an orientation determining component which determines a user's view angle of

azimuth and provides the user's view angle of azimuth to a presentation component;

the computing component operable to access the database and retrieve data from the database based on the type of data of interest, and the received sensed position; and

the presentation component <u>presenting the retrieved data to the user as a computer-based simulation</u> that illustrates an aspect of a physical location at the sensed position based on the user's view angle of azimuth from the physical location, wherein the input component receives a specified mode of operation of the portable device from the user, and the presentation component <u>presents the retrieved data to the user based on the specified mode of operation</u>.

J.A. 77 (emphasis added).  Claim 19 recites:

19. A method of mobile searching of information using a portable device, the method comprising:

on the portable device, receiving selected type of data of interest and a specified mode of operation of the portable device from the user;

sensing a position of the portable device and determining a user's view angle of azimuth;

accessing a database attached to the portable device and retrieving data from the database based on the type of data of interest and the sensed position; and

<u>presenting the retrieved data to the user as a computer-based simulation</u> that

> illustrates an aspect of a physical location at the sensed position based on the user's view angle of azimuth, wherein the presenting the retrieved data <u>further comprises presenting the retrieved data to the user based on the specified mode of operation</u>.

J.A. 78–79 (emphasis added).

In a final Office Action, the examiner rejected claims 1 and 19 as lacking enablement and as obvious in light of several prior art references. The Patent Trial and Appeal Board ("Board") affirmed the examiner's enablement rejection and further rejected the claims as indefinite under 35 U.S.C. § 112, second paragraph. The Board reversed the examiner's obviousness rejections, reasoning that the claims were too indefinite for the Board to "make a proper review of the prior art rejections." J.A. 1235. The Board denied Mr. Taylor's request for rehearing.

Mr. Taylor then filed a complaint under 35 U.S.C. § 145 in district court, seeking judgment that the '860 application's claims were patentable. The district court granted summary judgment to the Patent Office, concluding that the '860 application's claims were "non-enabled and indefinite," J.A. 65, and denied Mr. Taylor's motion for reconsideration.

Mr. Taylor appeals. We have jurisdiction to review the district court's decision under 28 U.S.C. § 1295(a)(4)(C). We address only the issue of enablement.

## DISCUSSION

We review the district court's grant or denial of summary judgment de novo. *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1348–49 (Fed. Cir. 2005). The pre-AIA version of 35 U.S.C. § 112, first paragraph, which applies

here, sets forth the requirement that a patent be enabled, providing relevant part:

> The specification shall contain . . . the manner and process of making and using [the invention] in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same . . . .

35 U.S.C. § 112, ¶ 1 (2010). Enablement is a question of law based on underlying factual inquiries. *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010) (citing *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1369 (Fed. Cir. 1999)).

The specification describes several "mode[s] of operation," including "En Route Mode," "Tour Mode," "Hazard Warning Mode," "Guidance Mode," "Destination Oriented Guidance Mode," "What's On Mode," "Walking[,] Driving[, and] Flying Mode[s]," "Pre-View Mode," "More Detail Mode," and "Simulation Mode." J.A. 280–86. The manner in which information is presented to the user differs for each of these modes of operation. "For example, when walking slowly around a town the user will be given more detail than when driving through the town or flying over-head." J.A. 282.

The Board concluded that the claims were not enabled because the specification did not teach a person of skill how to "present[] . . . retrieved data to the user based on [a user-]specified mode of operation" <u>during</u> a "computer-based simulation," as recited by claims 1 and 19. The Board reasoned that although the specification describes a "simulation mode," "[i]n describing that embodiment, the specification never discusse[s] simulation <u>within a mode</u> or <u>concurrent</u> modes." J.A. 59 (emphasis added). The district court agreed, as do we.

To enable the claims, the specification must enable simulation of all modes of operation. *See MagSil Corp. v. Hitachi Glob. Storage Techs., Inc.*, 687 F.3d 1377, 1381 (Fed. Cir. 2012) (noting that "a patentee chooses broad claim language at the peril of losing any claim that cannot be enabled across its <u>full scope</u> of coverage" (emphasis added)). Yet nothing in the specification, whether in the paragraph describing "simulation mode" or elsewhere, contemplates multiple kinds of simulations depending on a mode of operation selected by the user—let alone explains how such functionality would be achieved.

The Patent Office's expert testimony supporting this conclusion was unrebutted. Dr. Peter Dana, the Patent Office's technical expert, testified that:

> [t]he specification does not describe providing different simulations based on the user's mode of operation or how the device would generate different simulations based on whether the user is walking or flying. Systems intended to simulate a variety of user actions would require the simulation of vehicle dynamics and the software (or hardware) filters required to handle different dynamic scenarios.

Expert Report of Peter Dana, Ph.D., *Taylor v. Matal*, No. 1:15-cv-1607, ECF No. 86-1, at 15–16. Dr. Dana thus concluded that the claims of the '860 application were "non-enabled." *Id.* at 15. Though Mr. Taylor's four experts testified as to the enablement of certain features of GPS Explorer (e.g., video overlays and the determination of geographic orientation), none explained how the specification teaches a person of skill in the art to run another "mode of operation" while inside "simulation mode."

Mr. Taylor asserts that "[t]he specification comprehensively described many modes by which the '860 system will adjust the presentation of information to suit the mode of

travel selected by the user and the GPS calculated speed. The word 'mode' appears 32 times in the specification." Appellant's Br. 39. But the relevant question is not whether the specification discloses modes of operations. It is, instead, whether the specification teaches a person of skill how to "present[ ] retrieved data to the user as a computer-based simulation" while simultaneously "present[ing] the retrieved data to the user based on the specified mode of operation," as the '860 application claims. On this, the specification is silent.

Mr. Taylor's own experience in attempting to implement the invention further supports finding a lack of enablement here. Mr. Taylor admitted that in 1993, when he filed his initial application, "there was no internet," and that once the internet was developed he "attempt[ed] to play catch-up and move from [his] previous conception [of the invention] to [one] having more of an involvement in the internet." Deposition of William Michael Frederick Taylor (day 2), *Taylor v. Matal*, No. 16-cv-12, ECF No. 51-3, at 11–12. Mr. Taylor also admitted that even after filing his application he was "waiting and waiting and waiting for a suitable platform to become available" to allow him to implement his idea. *Id.* at 12. Indeed, as the district court found, Mr. Taylor's "first prototype was not operational until 1998 and neither that prototype nor the 2001 version contained all the features described in the specification, much less the claims." J.A. 65. Mr. Taylor's own experience thus shows that the specification did not enable the claimed invention but was instead "only a starting point, a direction for further research." *ALZA*, 603 F.3d at 941 (quoting *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1284 (Fed. Cir. 2007)).

No reasonable factfinder could conclude that the '860 application meets the enablement requirement. Because we hold the '860 application unpatentable for the

reasons above, we need not reach the other grounds raised on appeal.

**AFFIRMED**